[Sac. No. 467.   Department Two.—Dec. 19, 1898.]

## THE PEOPLE, Appellant, v. NATIONAL BANK OF D. O. MILLS & CO., Respondent.

TAXATION—VERIFIED LIST—POWER OF ASSESSOR.—Where a taxpayer returns to the assessor a verified list of his property, although he cannot be subjected to an additional assessment which shall not be revisable by the board of equalization, yet the assessor has power, notwithstanding such verified list, to assess other taxable property belonging to the same owner.

ID.—PERSONAL ASSETS OF NATIONAL BANK—EXEMPTION FROM STATE TAXATION.—The personal assets of a national bank, as distinguished from the shares of stock held by its shareholders, are exempt from state taxation. National banks and their property are withdrawn from the domain of state taxation, except so far as Congress has expressly consented that they may be taxed, in section 5219 of the Revised Statutes.

ID.—GENERAL AND SPECIAL DEPOSITS.—The general and special deposits in a national bank are assessable to the depositors and not to the bank.

APPEAL from a judgment of the Superior Court of Sacramento county and from an order denying a new trial. Joseph W. Hughes, Judge.

The facts are stated in the opinion of the court.

W. T. Fitzgerald, Attorney General, and Henry E. Carter, Deputy Attorney General, for Appellant.

The assessor had power to assess property not returned in the verified list, if the taxpayer does not list all of his property, and any further examination under oath is not required where the taxpayer admits that there is other property. Section 3622 of the Political Code does not require an examination under oath. The property of the National Bank was subject to state taxation. (Const., art. XIII, sec. 1.) State may tax property of a federal agent if not expressly exempt by law of Congress. (*Lane v. Oregon*, 74 U. S. 76; *Farrington v. Tenn.*, 95 U. S. 636; *Chicago etc. R. R. v. Guffey*, 120 U. S. 575; *Tennessee v. Whitworth*, 117 U. S. 136; *West Wisconsin R. R. Co. v. Supervisors*, 92 U. S. 593; *Tucker v. Ferguson*, 89 U. S. 578; *Thompson v. Pacific R. R.*, 76 U. S. 591; *Railroad Co. v. Peniston*, 85 U. S. 5; *Osborn v.*

*United States Bank*, 22 U. S. 367; *National Bank v. Commonwealth*, 9 Wall. 353.)

Lloyd & Wood, and W. S. Wood, for Respondent.

After the taxpayer has furnished to the assessor, and that officer has received and accepted, a sworn statement, the assessor cannot proceed to make an arbitrary assessment of property not included in the statement, without following the proceedings indicated by the code. (*Weyse v. Crawford*, 85 Cal. 196; *New Canaan v. Hoyt*, 23 Conn. 148; *County of San Mateo v. Mahoney*, 71 Cal. 205; *De Witt v. Hayes*, 2 Cal. 469; *Seale v. Mitchell*, 5 Cal. 402; *Hickman v. O'Neil*, 10 Cal. 292; 1 Kent's Commentaries, 476; Jones on Bailments, 46; *Lake County v. Quicksilver*, 66 Cal. 17; *San Luis Obispo v. Pettitt*, 87 Cal. 499, 500; Pol. Code, secs. 3632, 3633, 3649, 3681; Code Civ. Proc., secs. 1846, 1878, 1985.)   Congress is invested with power to fix the limits and determine the manner of taxation by the states of the property of national banks.   Congress has fixed certain and well-defined limitations and restrictions upon the taxation of the property of national banks. (*McCullough v. Maryland*, 4 Wheat. 424; U. S. Rev. Stats., secs. 5210, 5214, 5219, *Henry v. Downer*, 116 Cal. 20, 25; *Miller v. Heilbron*, 58 Cal. 141; *Weston v. Charleston*, 2 Pet. 465; *Van Allen v. Assessors*, 3 Wall. 573; *Farmers' Bank v. Deering*, 91 U. S. 31; *People v. Weaver*, 100 U. S. 539; *Talbot v. Silver Bow*, 139 U. S. 438; *Lane v. Oregon*, 7 Wall. 77; *Bank v. New York*, 2 Black, 632; *Rosenblatt v. Johnson*, 104 U. S. 462; *Mercantile Bank v. New York*, 121 U. S. 138; *National Bank v. Paducah*, 2 Flipp. 61; *Collins v. Chicago*, 4 Biss. 472; *National Bank v. Richmond*, 39 Fed. Rep. 309; 42 Fed. Rep. 877; *Brown v. French*, 80 Fed. Rep. 166; *Covington Bank v. Covington*, 21 Fed. Rep. 489; *Smith v. Webb*, 11 Minn. 378; *Flint v. Alderman*, 99 Mass. 141; *Pittsburg v. Pittsburg Nat. Bank*, 55 Pa. St. 45; *Smith v. Bank of Tecumseh*, 17 Mich. 479; *Carthage v. Bank of Carthage*, 71 Mo. 508; *Sumter County v. National Bank*, 62 Ala. 464; *Provident Inst. v. Boston*, 101 Mass. 575; *Bank v. Mayor etc.*, 62 Ala. 284; *Bank v. St. Joseph*, 46 Mich. 526; *Newport v. Mudgett*, 51 Pac. Rep. 466; *Pullman Bank v. Muring*, 51 Pac. Rep. 464, 466; *Miller v. First Nat. Bank*, 46 Ohio St. 424; *National Bank v. Fisher*, 45 Kan. 726; *National Bank v. Young*, 25 Iowa, 311; *Bank of Albia v. City Council*, 86 Iowa, 28; *County Commrs. v. Farmers' etc. Nat. Bank*, 48 Md. 117; *Consolidated Nat. Bank*

*v. Peoria County*, 48 Pac. Rep. 291–93;   *First Nat. Bank v. Province*, 54 Pac. Rep. 821;   *State v. Savings Bank*, 52 Pac. Rep. 733;   *National Bank v. Commonwealth*, 9 Wall. 353;   *Bank of Aberdeen v. Chehalis*, 6 Wash. 65;   166 U. S. 440;   *Paul v. McGraw*, 3 Wash. 296;   *Burk v. Badlam*, 57 Cal. 594;   *Farrington v. Tennessee*, 95 U. S. 679;   *Thompson v. Railroad*, 9 Wall. 579;   *Railroad v. Penniston*, 18 Wall. 5;   *Tappan v. Mercantile Bank*, 19 Wall. 490;   *Hepburn v. School Directors*, 23 Wall. 480;   *Palmer v. McMahon*, 133 U. S. 666;   *National Bank v. Garnett*, 160 U. S. 660;   *Mercantile Bank v. Shields*, 59 Fed. Rep. 592;   *Bank of Commerce v. New Bedford*, 155 Mass. 313;   *Russell v. Southard*, 12 How. 154;   Cooley on Taxation, 2d ed., 85;   *United States v. Bowen*, 100 U. S. 513;   *Yates' case*, 4 Johns. 359.)

TEMPLE, J.—The action was brought to recover taxes assessed to respondent, a national banking association, organized under the acts of Congress.

On the first Monday in March, 1895, it had real property in Sacramento, also personal property consisting of safes and fixtures, and money on hand and money on special deposit.

The blank form for a statement, with demand for a list, was served on it by the assessor, and it was returned with a description of certain real estate, and safes and fixtures, valued at five thousand dollars. The assessor was dissatisfied with this and returned it to the president of the bank, insisting that the personal assets of the bank were liable to taxation. After considerable conversation and discussion, during which the amount of the deposits as they were afterward assessed was stated by the president and cashier, the list was changed by erasing the item as to the safes and fixtures, and in that condition was verified and returned to the assessor by the cashier. The assessor then proceeded, without issuing any subpoena to any officer or employee of the bank, or to any other person, to assess to and against the defendant the safes and fixtures, valued at five thousand dollars, and deposits to the amount of eight hundred thousand dollars. In due time the defendant tendered the amount of the tax upon the real estate, but declines to pay the tax upon the personal property, claiming that it is exempt under the act of Congress creating national banks as an instrumentality of the federal government.

All the findings, save one, were agreed upon by the parties. It is not found, and does not appear, that the assessor considered that the defendant had after demand refused to make a statement as to its property, or that he made an entry to that effect on the assessment book as authorized by section 3633 of the Political Code, but it does appear that the board of equalization refused to consider the objections made by the bank to the assessment on the ground that the "assessment had been arbitrarily made, and that the board of equalization had no power to review the same." It is admitted that the bank did have the property which was assessed to it, and also that if it is not exempt from taxation it ought to have been given in by the bank and assessed to it. The refusal of the board to consider defendant's objections has not injured it, if the assessment was proper and would have been maintained.

Judgment was for the defendant, and the people appeal from the judgment and from an order denying a new trial.

It is contended that the assessment was illegal for two reasons: 1. After the taxpayer has returned to the assessor his verified list, although the assessor knows of other property belonging to the taxpayer; although, in fact, the taxpayer has had his attention called to the matter and admits the possession and ownership of other property, as was the fact in this case, still the assessor cannot include such property in the assessment without first issuing a subpoena and holding an examination, as he is authorized to do under section 3632 of the Political Code.

The proposition is, that an addition to the list furnished by the taxpayer, without the examination, renders the assessment void—at least, as to the property thus added to the list.

Unless the statute has given such effect to the list, this position cannot be maintained. The general duty of the assessor is to list all taxable property in his county or district. The law compelling the taxpayer to furnish the list is undoubtedly designed to assist the assessor in the performance of his duties. The assessment is not judicial, and must necessarily be summary. All property should be assessed, or the burden of taxation is not imposed alike upon all. The assessor must not knowingly permit any to escape. Must he, then, when he not only is fully informed as to the property, but the taxpayer admits

and states to him all the facts in regard to it, but simply contends that it is by law exempt, resort to this—in that case—useless proceeding before he can lawfully assess such property?

In many states the law does gives the verified list some effect, but I think it has generally been held that, unless the statute provides otherwise, it does not in any way limit the powers of the assessor. (Welty on Assessments, sec. 4; Cooley on Taxation, 357; 1 Desty on Taxation, 545.) In Massachusetts it is made conclusive upon the assessor, although it has been held there that the commissioners who revise and equalize may add other property. In New York, the taxpayer may make an affidavit which may have the effect to reduce his assessment, and the different states, as was to have been expected, have various schemes upon the subject. In Nevada, a similar law was construed, and it was held that the statement was merely in aid of the assessor and had no binding effect upon him. (*State v. Kruttschnit,* 4 Nev. 178. See, also, *Wabash etc. Co. v. Johnson,* 108 Ill. 1; *Felsenthal v. Johnson,* 104 Ill. 21; *Nelson v. Janes,* 150 Ill. 542; *Thompson v. Tinkcorn,* 15 Minn. 295.) The last-named case is particularly interesting upon this point. The statute there considered was quite similar to ours, and it was held that the assessor was not only at liberty to add omitted property of which he had knowledge, but was bound by his oath so to do, and it was said when the statute "does not directly or by implication make the oath of the party conclusive, it is merely a step in the proceedings to enable the assessor to make a complete return of all the property in his district." I believe this to be a correct statement of the general current of decision upon the subject.

The question, then, is, Is there anything in our statute which will preclude the assessor from listing any property to the taxpayer except such as he returns in his verified list, or shall admit on examination under oath after service of a subpoena upon him? The subpoena cannot be issued until after he has made his statement, and the statute does not expressly authorize the assessor to add to the list after the issuance of the subpoena and the examination of the taxpayer under oath, even if further property should be discovered upon such examination. Under the statute, and upon the *stricti juris* theory of construction,

so much insisted upon by respondent, the assessor has no more power to add to the list after the issuance of the subpoena and after the examination than he had before, and although the existence of other taxable property may have been admitted by the taxpayer. It must be observed, also, that this construction makes the taxpayer the judge of what property is exempt from taxation, *quoad* the assessor.

Counsel for respondent say it must be intended that upon the discovery of other property upon such examination the assessor should list it. To this I agree, but I know of no reason why property so discovered should be listed and property discovered through the unsworn admissions of the taxpayer should not be. The provision as to the examination is but an aid to the assessor to enable him to perform the duty enjoined upon him, and which, upon making his return, he is compelled to state under oath that he has done. (Pol. Code, sec. 3652.)

In respect to this, reliance is placed upon *Weyse v. Crawford,* 85 Cal. 196, which, it is contended, holds that the assessor cannot add to a list returned by a taxpayer unless he has been so subpoenaed and examined. I do not so understand that opinion. It holds that the assessor cannot make an assessment which shall not be revisable by the board of equalization unless the taxpayer has refused to make out his list under oath or had refused to comply with some other requirement of the law.

Properly understood, I have no quarrel with that decision. Unless there has been some dereliction on the part of the taxpayer, unless he has failed to render the assistance to the assessor which the law requires him to render, he cannot be subjected to the penalty of a non-revisable assessment. This, I think, is all that was decided upon this matter in *Weyse v. Crawford, supra.* It denominates such as assessment "an arbitrary assessment." The term is not found in the statute. As used in the opinion it evidently has reference only to an assessment which cannot be revised by the board of equalization. This is not a ruling that the assessor cannot assess property not found in the verified lists made by a property owner.

2. As a second reason for claiming that the assessment is illegal, it is contended that the personal assets of the bank are exempt from taxation by the terms of the national banking act.

It is provided in section 5219 of the Revised Statutes of the United States that nothing in that act shall prevent all shares in any association from being included in the individual assessment of the owner, in assessments made for the purpose of state taxation; "but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," et cetera.   It was also provided that shares owned by nonresidents should be taxed in the city or town where the bank is located, and not otherwise.   The original act required a list of shareholders to be kept open at the bank during business hours for the inspection of state officers, and no other visitorial power was allowed.

The attorney general does not deny that a national bank is a fiscal agent of the United States, created by it as a means of exercising its powers.   Nor does he apparently question the power of Congress to limit or deny the right of the state to tax its property; but he contends that, although the state cannot tax an agency of the United States, it may tax the property of its agents, at least where there is no express inhibition by Congress, and that taxation of the personal property of a bank, as other like property in the state is taxed, is not prohibited either expressly or impliedly by the act of Congress.

Upon all these questions the decisions of the Supreme Court of the United States are final, and accordingly counsel have most elaborately considered numerous cases decided by that tribunal.   I think counsel really disagree, however, only on one point, viz., whether taxation of such property is prohibited by the act of Congress.

Appellant states his contention as follows: "An important question raised here is whether the inherent right rests in a state to tax the property of a federal corporation, unless prohibited by Congress, or whether its right to tax the property of such corporation is derived from the federal government?"

The respondent submits two propositions: 1. Congress has the power; and 2. Has limited the power of the state to tax the property of national banks, and, of course, that it has denied to

the states the right to tax any property of national banks except their real estate, although permitting the taxation of the shares to the shareholders.

Since, therefore, respondent bases its claim to exemption upon the proposition that Congress has prohibited the tax, it is only important as a matter of argument to determine whether the state may tax such property unless forbidden by Congress, or whether it derives its power to tax from the permission given by Congress.

It is an important consideration in regard to this question that Congress has expressly provided for the taxation of the shares of the bank to the shareholders, and has directed the mode in which this shall be done. It has been repeatedly declared by the supreme court of the United States that by this provision Congress has not deprived the states of a resource from which they could properly derive a revenue. The shares of stock may be taxed, and it is hornbook law that the stock represents the value of all the assets of the bank. It has been so expressly adjudicated in this state. (*People v. Burke*, 57 Cal. 594; *Spring Valley Water Works v. Schuttler*, 62 Cal. 69; *San Francisco v. Frey*, 63 Cal. 470.) It is assumed in *Van Allen v. Assessors*, 3 Wall. 373; also in *People v. Weaver*, 100 U. S. 539, where it is asserted that the limitation was intended only "to protect the bank from anything beyond their general share of the public burdens."

In many other cases the proposition is taken for granted, and it is, I think, quite obvious. Under our decisions, we cannot deny that when the capital stock is assessed the assets of the corporation are subjected to the tax. In the case of national banks, the value of the shares was in part made up of United States bonds, in which a portion of the capital must be invested. The bonds are not subject to state taxation, yet no deduction is required from the assessment for the investment in the bonds. So the real estate may be assessed as well as the stock, but the value of the shares is made up in part by the real estate. The trouble is, that we do not tax to the individual shareholders the stock; but, on the other hand, we assess to the corporation all its assets, which we have held gives the value to the stock. Under our methods of classification, made for the purpose of equal-

izing the burdens of taxation, it has been held that we cannot assess the shares of stock in a national bank as other money capital is assessed.

But, conceding that Congress could direct the extent and mode of taxing the property of the bank, if the mode provided would, if pursued, subject the property of the bank to taxation to the same extent that other like property is taxed, the conclusion is irresistible that it was intended that the tax expressly permitted should be the only tax to which the property is to be subjected.

But it seems to me that the precise question was determined in *Rusenplatt v. Johnson,* 104 U. S. 462. A state attempted to tax the personal assets of an insolvent national bank. It was quite naturally thought that it had then ceased to be a governmental instrumentality. In a short opinion by the chief justice, it was held that as the assets still belonged to the corporation they were exempt under section 5234 of the Revised Statutes of the United States.

In *Covington City Bank v. Covington,* 21 Fed. Rep. 489, Mr. Justice Mathews refers to the case. After asserting the power of Congress in the premises, he says: "It has in fact withdrawn them and their property from the domain of State taxation, except so far as it has expressly consented that they may be taxed. That consent, so far as it has been given, is contained in section 5219 of the Revised Statutes. It does not permit taxation of any property belonging to the bank, except only its real estate, as clearly appears from *Rusenplatt v. Johnson, supra.*"

General and special deposits are assessable to the depositors. (*Yuba v. Adams,* 7 Cal. 35.)

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.