[S. F. No. 13194. In Bank.—February 14, 1929.]

FEATHER RIVER POWER COMPANY (a Corporation), Petitioner, v. STATE BOARD OF EQUALIZATION, etc., et al., Respondents.

Robert M. Searls for Petitioner.

U. S. Webb, Attorney-General, and Frank Guerena, Deputy Attorney-General, for Respondents.

SEAWELL, J.—The hydroelectric properties of petitioner, organized as a public utility corporation, and particularly the Buck Creek plant, had been for three years immediately prior to the first Monday in March, 1928, in the course of construction and were nonoperative property and therefore subject to assessment and taxation in Plumas County, their situs for county purposes. (Sec. 3665b et seq., Pol. Code.) On or about March 14, 1928, petitioner, within ten days after the first Monday in March, as required by section 3665c of the Political Code, made its report and tax return to the State Board of Equalization and furnished a duplicate of said report to the assessor of Plumas County covering so much of its property as was located in Plumas County. Said report and return were verified on March 13, 1928, and described its properties located in said county of Plumas in these words: "Plant in course of construction—See our letter of March 1st." The only portion of said letter which is at all relevant to the subject matter reads: "This company is now engaged in the construction of a power plant, operation of which will be commenced shortly." By said report, as by its reports of former years, petitioner's properties were rated as being nonoperative. More than two

months thereafter petitioner, claiming that said report was made under a mistake of fact and was erroneous in that it reported said properties as being nonoperative when in fact they were operative, caused the compilation and the listing of certain lands claimed to be operative and in use in the operation of said hydroelectric plant as distinguished from those which were nonoperative, and transmitted, on May 21, 1928, a copy of said lists and accompanying maps to the assessor of Plumas County. On June 8, 1928, petitioner filed with the State Board of Equalization an amended report and return, claiming that the properties therein described and which are involved in this proceeding, particularly the Buck Creek plant, were operative as of date March 5, 1928, and, therefore, were not subject to assessment and taxation by said county of Plumas for county purposes, which tax computed on said properties as nonoperative amounted to approximately $7,000. The county assessor of Plumas County, in a communication to the State Board of Equalization dated June 20, 1928, refused to recognize said amended report and return on the ground that all of the properties of petitioner located in Plumas County had been placed upon the assessment-rolls of that county in accordance with the verified report and return of petitioner made within the time provided by law, to wit, March 13th, and that said proposed amended report was filed long after the time provided by law for the filing of said report and return. Other objections not necessary to be stated here were made by said assessor to said proposed amended report. By reason of the objections and protests of said assessor, petitioner appealed to said State Board of Equalization and a hearing was had upon said amended report and return on June 26, 1928, and said Board of Equalization on June 30, 1928, found and decided "that all property of the Feather River Power Company be and the same is hereby declared to be classed as nonoperative as of the first Monday in March, 1928, and, therefore, subject to assessment for local taxation as of that date."

Petitioner thereupon applied to this court for a writ of *mandamus* to be directed against said board and commanding it to correct and amend its findings and decision by designating as operative property for the year 1928 all of the properties listed as operative in petitioner's said

amended report and return filed approximately three months after the expiration of the period within which each corporation or company organized as a hydroelectric utility must file its report for the purposes of assessment and taxation.

Petitioner has presented for our consideration a record of the proceedings had and taken before the State Board of Equalization which consists of affidavits, records and testimony of certain witnesses produced by it. All of the hydroelectric energy generated by petitioner on its Buck Creek plant was sold on contract direct to the Great Western Power Company, a public utility, and by it transmitted over its wires to its consumers throughout the northern part of the state. A table prepared by R. E. Ballew, the load dispatcher of the Great Western Power Company, showing the electric current in kilowatt hours purchased by and transmitted to the Great Western Power Company from petitioner's Buck Creek plant, which is a part of the properties of petitioner situate in Plumas County, is made a part of the record. By said table it appears that the first delivery of electric current by petitioner to the Great Western Power Company was made on March 4, 1928, and consisted of 53,000 kilowatt hours of electric current. The same table shows on March 5, 93,000 kilowatt hours; March 6, 173,000; March 7, 124,000. During certain days of said month the electric current ran as high as 358,000 kilowatt hours. On six days of said month, after operations are alleged to have begun, no electric current was furnished by said Buck Creek plant. The Buck Creek plant seems to be one of a group of two other plants and properties, to wit, Grizzly Creek and Milk Ranch Creek, which constitute the hydroelectric system of the Feather River Power Company in Plumas County. T. S. MacDonald, the superintendent of Buck Creek plant of said Feather River Power Company, by affidavit, averred that said power plant was physically and electrically connected with the electric transmission lines of the Great Western Power Company prior to March 5, 1928, and that on March 4, 1928—one day prior to the first Monday in March—said Buck Creek plant began operations and the delivery of electric current to said Great Western Power Company in kilowatt hours, as shown by the statement heretofore referred to. The assistant secretary, who prepared and verified the report and return within the time provided

by law, appeared before the State Board of Equalization and testified that she had not been informed that there had been any change in the status of the property from what it had been at the times she made the reports for the three previous years. She "presumed that the Great Western Company had their original contract and that they were not required to take any electricity until the plant was entirely completed, that is, not until the Milk Ranch Creek conduit had been finished." She further testified that she did not know the state of completion of the plant on the first Monday in March, and that "there was still construction going on at that time with regard to the Milk Ranch Creek conduit."

The secretary and treasurer of petitioning power company testified that on Sunday, March 4, the power plant was started and thereafter continuously operated in the generation of power for public use through the distribution system of the Great Western Power Company. He did state, however, that the Milk Ranch Creek conduit was but a little more than one-half completed on March 5th. As to the uncompleted state of the reservoirs the witness testified: "The reservoirs themselves were operative so far as actual use was concerned, that is, they were all operative because we were using them although they might not have been 100% complete. The portion of the dam that was not completed was then operative because so far as it was completed we were using it." The witness explained that the completion of the plant at an earlier day was delayed by winter storms. On March 3, 1928, a meeting was arranged between the representatives of the Great Western Power Company, which had contracted for all the power generated, and the Feather River Power Company, whereby the former company, which under its contract of 1925 was not obligated to accept power from the latter until it should entirely complete all of the various units in the construction of the whole property, agreed to accept power at once under an agreement and understanding that said Feather River Power Company was not to be relieved of the obligation to complete its plant as it had covenanted to do by its original contract. This agreement to accept power in advance of the completion of petitioner's plant was executed on Saturday afternoon, March 3d.

Said secretary and treasurer testified that he had not learned of the filing of the record by the assistant secretary until on or about May 10th or 15th, on which date he took the matter up and filed the amended report and tax return which culminated in the order made by the State Board of Equalization that all property of the petitioner be classified as nonoperative as of the first Monday in March. T. S. MacDonald, superintendent of operations for petitioner, testified that the long break in the supply of power in May, 1928, and the variation in the load beginning in early March was occasioned by minor repairs. He also testified that so far as operative conditions were concerned, the plant could have produced its maximum output on the first Monday in March and that the Milk Ranch Creek conduit had no direct relation to the plant except as a means of furnishing additional water, of which they then had sufficient.

■ If the properties of petitioner be classified as operative public utility properties, the tax shall be fixed upon the gross receipts from operation and shall be exclusively for state purposes. (Secs. 3664, 3664a, Pol. Code.) If, on the other hand, they should be classified as nonoperative properties they would be subject to assessment and taxation for county, municipal and district purposes. (Sec. 3665b, Pol. Code.) As nonoperative properties the tax thereon due and payable on the third Monday in October, 1928, would have amounted to approximately $7,000. If operative, no tax for county purposes would be collectible, inasmuch as the gross receipts from operation are defined to include all sums received from business done during the year ending the thirty-first day of December last preceding (sec. 3665a, Pol. Code), and said tax on gross receipts is in lieu of all other taxes and licenses, except county and municipal taxes on real estate. No state tax under article XIII, section 14, of the state constitution, could have been imposed as of 1928 for the reason that petitioner was not operating as a public utility at any time during the calendar year 1927.

■ It is the policy of the law that all property within the state should bear its fair and equal burden of taxation and a liberal construction will be indulged to accomplish that end.

■ Section 3666 of the Political Code provides that in case of an issue raised as to whether certain property is

operative or nonoperative the State Board of Equalization shall fix a time for the hearing and determination of said issue and shall, "from the evidence presented and from the best information it can obtain," determine whether said property is operative or nonoperative. "Said decision shall be binding upon all parties . . . unless set aside by a court of competent jurisdiction . . . "

From the above code section it will be seen that the state board is given wide latitude in the matter of investigation as well as being vested with finality of decision subject to being set aside by a court of competent jurisdiction. The decision of a body vested with the power to render decisions will not, however, be set aside unless it appears that said body has abused the power reposed in it or has exceeded its jurisdiction. It cannot be said that either a misuse of power or an excess or want of jurisdiction has been shown to exist in the determination of the proceeding herein reviewed.

 That the petitioner did not comply with the taxation and revenue laws of the state is admitted. The state and the county assessor of Plumas County were certainly thrown off their guard by petitioner's report and tax return as far as making a satisfactory investigation on the vital day, to wit, the first Monday in March, as to whether or not petitioner's properties were in such a state of completion as to be classified as operative. Two months or more passed during which period there had been much activity on the part of petitioner in preparing to show that a condition existed on the first Monday in March, 1928, contrary to that which was described in its sworn statement made some two months prior thereto. We have no intention of suggesting that the witnesses who testified in behalf of petitioner wilfully or at all misstated the facts as they saw them, but manifestly the state and county were, by petitioner's fault and neglect to act within the time prescribed by law—assuming its report to have misstated the actual condition—deprived of an opportunity of making a timely investigation and presenting their case in the full strength they would have been able to do had they not been lulled into a state of repose by the sworn statement and tax return filed by petitioner. The true situation is not made entirely satisfactory by the record prepared by petitioner. That there was a question existing as to the particular day on which the plant was completed is

shown by the evidence adduced by petitioner. Whether the properties were operative on said particular day involved the exercise of judgment on the part of the State Board of Equalization to be formed "from the evidence presented and from the *best information*" that the board could obtain. The burden of proof was upon petitioner. The judgment of the state board should not be set aside unless it clearly appears that it exceeded its powers or acted arbitrarily in reaching its conclusion. The status of petitioner's properties was a matter about which reasonable persons might entertain conflicting opinions. In such a case the judgment of the board cannot be disturbed.

The revenue laws make no provision authorizing the filing of an amended report such as was offered by petitioner. Taxation laws are imperative in their requirements. If, however, such a procedure is to be countenanced in the interest of justice, the person or corporation invoking the same and who will profit thereby should, as a matter of policy, be required to support its position with clear and convincing proofs. The State Board of Equalization upon a consideration of all the evidence before it and from *information* obtainable by it, having made its order that petitioner's properties be classified as "non-operative as of the first Monday in March, 1928, and, therefore, subject to assessment for local taxation of that date," and it not appearing that it exceeded its powers or acted contrary to law in so doing, the petition is hereby denied and the writ is discharged.

It is so ordered.

Shenk, J., Waste, C. J., Curtis, J., Langdon, J., Preston, J., and Richards, J., concurred.