[L. A. No. 20017. In Bank. July 1, 1947.]

WATCHTOWER BIBLE AND TRACT SOCIETY, INC., Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

A. L. Wirin, Fred Okrand and Hayden C. Covington for Appellant.

Harold W. Kennedy, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

CARTER, J.—A judgment of dismissal was entered following plaintiff's failure to amend after a demurrer was sustained with leave to amend. Plaintiff's action is one to recover taxes (paid under protest) levied and assessed by defendants county and city.

Plaintiff is a corporation organized by Jehovah's Witnesses, a religious sect, to assist in fostering their creed. Plaintiff owns real property in defendant county upon which buildings are situated. This property is used for religious purposes. (An exemption was claimed and allowed for that real property pursuant to the Constitution [Cal. Const., art. XIII, § 1½] and no dispute exists with reference to it.) Plaintiff owns and stores in one of said buildings pamphlets, books and other literature which are used by it and the Jehovah's Witnesses in the exercise of their religion and for proselyting purposes. The buildings being the distribution point for said literature. The literature so stored was assessed as personal property subject to taxation and was levied upon for the payment of such tax. It is claimed by plaintiff that said property is exempt from taxation under the Constitution (Cal. Const., art. XIII, § 1½), and if not, that the tax so levied is invalid as a violation of the right of religious liberty and freedom of speech and the press as guaranteed by fundamental law. (U. S. Const., 1st and 14th Amend.; Cal. Const., art. I, §§ 4, 9.)

██ Turning first to the claim that the property taxed is exempt under the laws of this state, the provision relied upon reads: "All buildings, and so much of the real property on which they are situated as may be required for the convenient use and occupation of said buildings, when the same are used solely and exclusively for religious worship, shall be free from

taxation.'' (Cal. Const., art. XIII, § 1½.) That section was added to the Constitution in 1900. In this connection it should be noted in passing that the *Legislature is authorized* to exempt from taxation ''property used exclusively for religious . . . purposes and owned by . . . corporations organized and operated for religious . . . purposes'' not conducted for profit. (Cal. Const., art. XIII, § 1c.) At the time of the assessment of the property here involved the Legislature had not acted pursuant to that authority. It had merely provided that ''The church exemption is as specified in section 1½ of Article XIII of the Constitution.'' (Rev. & Tax. Code, § 206.) Subsequently, in 1945, the Legislature added the so-called ''welfare exemption'' which embraces property used exclusively for religious purposes with specified qualifications. (Rev. & Tax. Code, § 214, as added Stats. 1945, ch. 241, § 1.) It may be that the term ''property'' as used therein includes personal property. (See Rev. & Tax. Code, § 103.) Be that as it may, by no stretch of the imagination may the term ''building'' as used in article XIII, § 1½, include the personal property here taxed although it is assumed that it is used for the exercise of religion as well as the building in which it is stored. It is unquestionably personal property, not being in any sense a fixture or attached to the building. ■ Where personal property has become a fixture it is a part of the building and then is assessed as real property as distinguished from personal property, thus indicating the distinction between the two. (See *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512].) ''In Bouvier's Law Dictionary (Rawle's edition, vol. 1, p. 269) 'building' is defined as follows: 'An edifice erected by art, and fixed upon or over the soil, composed of stone, brick, marble, wood, or other property substance, connected together, and designed for use in the position in which it is so fixed.' '' (*Swasey* v. *County of Shasta,* 141 Cal. 392, 394 [74 P. 1031].) ■ Moreover the term must be given a strict construction inasmuch as the tax exemption statutes are to be strictly construed against the taxpayer. (*Lockhart* v. *Wolden,* 17 Cal.2d 628 [111 P.2d 319]; *San Francisco* v. *San Mateo County,* 17 Cal. 2d 814 [112 P.2d 595]; *Helping Hand Home* v. *San Diego County,* 26 Cal.App.2d 452 [78 P.2d 778]; 24 Cal.Jur. 89-90.)

■ Plaintiff asserts that it is a matter of common knowledge that the items of property such as pews, altars and other paraphernalia used in the exercise of religion are not taxed.

We have no such knowledge and we are not justified in indulging in such an assumption.

The argument advanced by plaintiff in support of its contention that the tax here involved is invalid, is to the effect that a general, uniform, nondiscriminatory ad valorem property tax for revenue purposes may not be imposed upon the property of a religious organization used by it in the exercise of its religion or worship by reason of the religious liberty guarantee, and, in the instant case, the property consisting of literature, by reason of the guarantee of freedom of speech and press. There are two important factors bearing upon this problem that should first be considered.

First, the tax levied here was one solely for the purpose of revenue to defray the general expenses of government, no element of regulation being involved. It is not a license tax—a tax on the exercise of a right, privilege, occupation, calling, or activity, and is payable whether or not the property is used in a commercial profit motive enterprise. Nor does it impose any conditions or restrictions upon the use of the property taxed. It is solely a general ad valorem property tax which is the chief source of revenue for the local government. (See *Brunton* v. *Superior Court,* 20 Cal.2d 202 [124 P.2d 831]; *Ingels* v. *Riley,* 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1].) It is a uniform, nondiscriminatory tax levied upon all property alike, personal and real, regardless of the use to which it is put, pursuant to the constitutional provision reading: ''All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided.'' (Cal. Const., art. XIII, § 1.) The purpose of that provision is to secure equality of taxation which results from subjecting all property to the same burden. (See *Feather River Power Co.* v. *State Board of Equalization,* 206 Cal. 486 [274 P. 962]; *People* v. *National Bk. of D. O. Mills & Co.,* 123 Cal. 53 [55 P. 685, 69 Am.St.Rep. 32, 45 L.R.A. 747]; 24 Cal.Jur. 71.) There is, therefore, no discrimination in the instant tax and it is not even remotely aimed at any possible restriction on the exercise of religion, or freedom of speech or press.

Second, the power of taxation for revenue purposes is probably the most vital and essential attribute of the government. Without such power it cannot function. (Cooley's Const. Limitations, vol. 2, pp. 986-987; 24 Cal.Jur. 34-35.)

It has never been supposed that the property used in the exercise of the rights of freedom of press or religion is not subject to a uniform tax for revenue imposed upon all alike. It is the general rule that property used in connection with the publication of a newspaper has no special immunity from the general laws. (*Mabee* v. *White Plains Pub. Co.*, 327 U.S. 178 [66 S.Ct. 511, 90 L.Ed. 607]; *Oklahoma Press Pub. Co.* v. *Walling*, 327 U.S. 186 [66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531]; *Associated Press* v. *Labor Board*, 301 U.S. 103 [57 S.Ct. 650, 81 L.Ed. 953].) And instrumentalities used in connection with the press and the publication business are subject to normal uniform general taxation. (*Grosjean* v. *American Press Co.*, 297 U.S. 233 [56 S.Ct. 444, 80 L.Ed. 660]; *Giragi* v. *Moore*, 48 Ariz. 33 [58 P.2d 1249, 110 A.L.R. 314]; 49 Ariz. 74 [64 P.2d 819, 110 A.L.R. 320] appeal dismissed 301 U.S. 670 [57 S.Ct. 946, 81 L.Ed. 1334], on authority of *Grosjean* v. *American Press Co.*, *supra; Arizona Pub. Co.* v. *O'Neil*, 22 F.Supp. 117, affirmed 304 U.S. 543 [58 S.Ct. 950, 82 L.Ed. 1518], on authority of *Grosjean* v. *American Press Co.*, *supra;* 110 A.L.R. 327; 35 A.L.R. 7; Thayer, Legal Control of the Press, p. 64.) In the Grosjean case the court declared invalid a statute which imposed a license tax, based on gross receipts, for the privilege of engaging in the business of publishing advertisements in any newspaper or publication whatever. There, however, the application of the tax was measured, not by the volume of advertisements, but by the extent of the circulation of the publication in which the advertisements were carried, *showing an express purpose to penalize certain publishers and curtail circulations.* (*Mabee* v. *White Plains Pub. Co.*, *supra; Oklahoma Press Pub. Co.* v. *Walling, supra.*) The court was careful to point out that: "It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government. But this is not an ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press.

"The predominant purpose of the grant of immunity here invoked was to preserve an untrammeled press as a vital source of public information. The newspapers, magazines and other journals of the country, it is safe to say, have shed and continue to shed, more light on the public and business affairs of the nation than any other instrumentality of publicity; and since informed public opinion is the most potent

of all restraints upon misgovernment, the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern. The tax here involved is bad not because it takes money from the pockets of the appellees. If that were all, a wholly different question would be presented. It is bad because, in the light of its history and of its present setting, it is seen to be a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties.'' (*Grosjean* v. *American Press Co., supra,* 250.) The recent cases in the United States Supreme Court have stated a similar rule. In *Murdock* v. *Pennsylvania,* 319 U.S. 105 [63 S.Ct. 870, 891, 87 L.Ed. 1292, 146 A.L.R. 81], the court denounced an ordinance requiring the payment of a license tax as a condition to soliciting as applied to the pursuit of the activities of religious colporteurs, Jehovah's Witnesses, as in the case at bar, in distributing their literature and receiving (at the will of the distributee) a price therefor. The sole issue as stated by the court was ''the constitutionality of an ordinance which as construed and applied requires religious colporteurs to pay a license tax *as a condition to the pursuit of their activities.''* (P. 110.) (Emphasis added.) (The tax in the instant case is not a license tax and the payment of it is not a condition to the pursuit of plaintiff's activities.) And the court went on to say: ''We do not mean to say that religious groups and the press are free from all financial burdens of government. See *Grosjean* v. *American Press Co.,* 297 U.S. 233, 250 [56 S.Ct. 444, 80 L.Ed. 660] [the portion of the Grosjean decision heretofore quoted.] We have here something quite different, for example, from a tax on the income of one who engages in religious activities or *a tax on property used or employed in connection with those activities.* It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon. The tax imposed by the City of Jeannette is a flat license tax, the payment of which is a condition of the exercise of these constitutional privileges. . . . It is a license tax—a flat tax imposed on the exercise of a privilege granted by the Bill of Rights. A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution. Thus, it may not exact a license tax for the privilege of carrying on interstate com-

merce (*McGoldrick* v. *Berwind-White Coal Min. Co.,* 309 U.S. 33, 56-58 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]), although *it may tax the property used in, or the income derived from, that commerce, so long as those taxes are not* discriminatory. Id., p. 47 and cases cited.'' (P. 112.) (Emphasis added.) The foregoing limitation on the holding of the majority opinion in the Murdock case and the rule applicable here is elucidated in the dissent of Justice Reed: ''Nor do we understand that the Court now maintains that the Federal Constitution frees press or religion of any tax except such occupational taxes as those here levied. Income taxes, ad valorem taxes, even occupational taxes are presumably valid, save only a license tax on sales of religious books.'' (P. 129.) In *Follett* v. *McCormick,* 321 U.S. 573 [64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317], the same type of ordinance considered in the Murdock case was involved and the court again stated the exception applicable in the case at bar as follows: ''This does not mean that religious undertakings must be subsidized. The exemption from a license tax of a preacher who preaches or a parishioner who listens does not mean that either is free from all financial burdens of government, including taxes on income or property. We said as much in the Murdock case. 319 U.S. p. 112. But to say that they, like other citizens, may be subject to general taxation does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege.'' (P. 577.)

As we have seen the tax here involved is not such a burden on the exercise of religion as to render it invalid. It is not of the character heretofore denounced by the Supreme Court of the United States. While the power to tax may involve the power to destroy it is clear that no such result will be accomplished by the tax here imposed. The property here involved is required to bear only its share of the burden of the maintenance of the government which is for its protection equally with other property in Los Angeles County. The very liberty invoked is made realistic by the protection afforded by that government.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.