## WATCHTOWER BIBLE & TRACT SOC., Inc. v. LOS ANGELES COUNTY et al.

### No. 12326.

United States Court of Appeals
Ninth Circuit.

April 29, 1950.

Wirin & Okrand, Fred Okrand, Los Angeles, Cal., Hayden C. Covington, Brooklyn, New York, for appellant.

Harold W. Kennedy, County Counsel, Gordon Boller, Deputy County Counsel, Los Angeles, Cal., for appellees.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the district court denying declaratory relief and recovery of personal property taxes in the amount of $292.85 imposed on appellant by appellees and paid by it under protest. The declaratory relief sought is a judgment that the tax statutes [1] are unconstitutional on the ground that, as construed and applied, the statutes infringe upon the freedom of religion and freedom of the press guaranteed by the First and Fourteenth Amendments to the Constitution.

1. California Revenue and Taxation Code, §§ 106, 201, 401, 2151, 2602, 2903.

■■ The complaint alleges that appellant is a New York corporation used exclusively by Jehovah's Witnesses, a religious organization, in spreading its religious doctrines. The corporation maintains a warehouse in the City of Lynwood, County of Los Angeles, which it uses as a storage place for religious books, pamphlets, etc., dealing with the religious doctrines of Jehovah's Witnesses. From this warehouse it distributes literature to its evangelists, missionaries and ministers. This literature was assessed as personal property subject to the California personal property tax.

We think the complaint presents facts upon which the appellant corporation[2] is entitled to invoke the jurisdiction of the federal courts by virtue of the Civil Rights Act[3] and Section 1343 of 28 U.S.C.A.

■■ The facts alleged in the complaint were proved. This personal property tax is imposed alike on all taxpayers without pertinent exception. For the tax, the corporation received from the appellees police and fire protection and other services to its property during storage and distribution. We see no reason why the fact that the property so held consists of religious books and documents requires that such service should be given gratuitously to the corporation. It cannot be said that the tax is for more than such protection, thus differing from the license fee directly laid on one of Jehovah's Witnesses in Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 116, 63 S.Ct. 870, 876, 87 L.Ed. 1292, 146 A.L.R. 81, where the Court described the fee as one not "imposed as a regulatory measure and *calculated to defray the expense of protecting* those on the streets and at home[s] against the abuses of solicitors." (Emphasis supplied.) This was preceded by the Court's statement at page 112 of 319 U.S., at page 874 of 63 S.Ct., "We do not mean so say that religious groups and the press are free from all financial burdens of government. See Grosjean v. American Press Co., 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660.

We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities. *It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon."* (Emphasis supplied.)

In Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660, the Court held invalid an unusual form of taxation impairing the freedom of the press, here claimed to be so impaired. In so holding, that Court distinguished the tax held invalid from the ordinary forms of taxation to support the government, stating at page 250 of 297 U.S., at page 449 of 56 S.Ct., "It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government. But this is not an ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press."

See likewise Follett v. Town of McCormick, 321 U.S. 573, 577, 64 S.Ct. 717, 88 L. Ed. 938, 152 A.L.R. 317.

The same question was presented in a suit before the Supreme Court of the State of California in which the same persons were parties litigant and in which the tax was held valid against the contentions here urged. Watchtower Bible and Tract Society v. County of Los Angeles, 30 Cal. 2d 426, 182 P.2d 178, certiorari denied 332 U.S. 811, 68 S.Ct. 112, 92 L.Ed. 389. In that case the California supreme court held of the instant tax (30 Cal.2d page 429, 182 P.2d page 180), "First, the tax levied here was one solely for the purpose of revenue to defray the general expenses of government, no element of regulation being involved. It is not a license tax—a tax on the exercise of a right, privilege, occupation, calling, or activity, and is payable whether or not the property is used in a commercial profit motive enterprise. Nor

2. Pierce v. Society of the Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468.

3. 8 U.S.C.A. § 43.

does it impose any conditions or restrictions upon the use of the property taxed. It is solely a general ad valorem property tax which is the chief source of revenue for the local government. * * *"

Furthermore, it is arguable that isolating the corporation because of its religious character and requiring the state and municipality gratuitously to furnish to it such services would be utilizing a tax "to aid [one of the] religious groups to spread their faith." Such aid was held by the Supreme Court in McCollum v. Board of Education, 333 U.S. 203, 210, 68 S.Ct. 461, 464, 92 L.Ed. 648, 2 A.L.R.2d 1338, to be "under the ban of the First Amendment (made applicable to the States by the Fourteenth) as we interpreted it in Everson v. Board of Education, 330 U.S. 1, [15, 16], 67 S.Ct. 504, [91 L.Ed. 711, 168 A.L.R. 1392.]"

The judgment is affirmed.