167 So.2d 546

STATE of Alabama

v.

T. J. TOOLEN, Bishop of Mobile.

1 Div. 175.

Supreme Court of Alabama.

Sept. 10, 1964.

Vincent F. Kilborn, Mobile, for appellee.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Jr., Asst. Attys. Gen.; for appellant.

MERRILL, Justice.

The State of Alabama appeals from a decree setting aside and annulling a use tax assessment against St. Mary's Roman Catholic Church in Mobile. The State had made the assessment and Most Rev. T. J. Toolen, Bishop of Mobile, as a corporation sole and as trustee for the use and benefit of the pastor and St. Mary's Parish, filed an appeal to the circuit court under the provisions of Tit. 51, § 140, Code 1940, for the use and benefit of St. Mary's Parish. Since the statute permits a taxpayer to appeal to the circuit court, and since the circuit court referred to St. Mary's Parish as the appellant, we will also refer to it as the "appellant", although it is the appellee here, because its appeal was sustained in the court below.

In January, 1962, auditors from the State Department of Revenue conducted an audit of the books and records of the parish church in Mobile known as St. Mary's Catholic Church. The audit covered the period October 1, 1958 through September 30, 1961. As a result of the audit, appellant was charged with use taxes and interest amounting to $328.95 and penalty of $32.90. The assessment was made final September 28, 1962.

Appellant paid the assessment under protest and filed its appeal under Tit. 51, § 140. Appellant did not, and does not, question its liability for either sales or use tax on "normal parish supplies such as pencils, stationery and business supplies." The tax is contested on items which are used exclusively in connection with religious worship services. They are described in the decree of the trial court as follows:

"It appears from the evidence that the assessment relates to the purchase and use of sacramental wine used in the celebration of Mass, the Mass being the central act of worship of the Catholic faith. It also relates to the purchase and use of candles, sacred vessels such as chalices, ciboria monstrances and like items used directly in connection with religious services. Likewise involved are missals used on the altar in connection with the Mass, leaflet missals in English distributed to the congregation for use in following in English the Mass and like types of booklets printed in English for following other types of religious rites such as baptisms, burial services, etc. Included also were 'ordos' and similar types of calendars informing priests and faithful of the feast days and other events occurring during the ecclesiastical year, envelopes for offerings on special feast-days or for special collections, rosaries, medals, medallions and like sacramentals, 'holy' cards, cards inscribed with hymns, novena prayers etc., and sheet music for use by organist and choir."

We are informed in brief that assessments have been made against churches of other denominations, and that the instant case will serve as a test case for all of them.

Appellant contends that the assessment of the tax and the tax itself is barred by the Constitution of Alabama and by the First and Fourteenth Amendments to the Constitution of the United States.

Section 3 of the Constitution of Alabama provides:

"That no religion shall be established by law; that no preference shall be given by law to any religious sect, society, denomination, or mode of worship; that no one shall be compelled by law to attend any place of worship; nor to pay any tithes, taxes, or other rate for building or repairing any place of worship, or for maintaining any minister or ministry; that no religious test shall be required as a qualification to any office or public trust under this state; and that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles."

It is obvious that Section 3 has no application to the question before us.

Section 91 of our Constitution provides for exemptions of real estate used exclusively for religious purposes, but it "places no limitation on the Legislature concerning the taxation of personal property." State v. Bridges, 246 Ala. 486, 21 So.2d 316, 159 A.L.R. 78. The Bridges case is also authority for the principle that "The right to tax is never presumed abandoned or surrendered unless it clearly appears that such was the intention."

Our pertinent statutory exemption is Tit. 51, § 2, Code 1940, which exempts "all property, real and personal, used exclusively for religious worship," from "ad valorem taxation and none other." Under this section, all the personal property under consideration here is exempt from ad valorem tax regardless of how valuable it may be or how long it may be kept, stored, used or consumed in Alabama. We have held that our use tax is not a property tax. National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478; Y. M. C. A. of Birmingham v. State, 265 Ala. 640, 93 So.2d 781, and here we are concerned, not with a property tax but with a use tax.

Title 51, § 788, Code 1940, is the levying section of the Alabama Use Tax and provides in pertinent part:

"An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail on or after the first of March, 1939, for storage, use or other consumption in this state at the rate of three percent of the sales price of such property, regardless of whether the retailer is or is not engaged in the business in this state, * * *. Every person storing, using or otherwise consuming in this state tangible personal property purchased at retail shall be liable for the tax imposed by this article, and the liability shall not be extinguished until the tax has been paid to this state; * * *."

The administrative construction of the statute to religious organizations is Regulation R5-011, promulgated by the State Department of Revenue in 1951, which reads:

"Religious Organizations and Institutions, including Churches, Church Schools, Church Hospitals and so forth are not exempt from the payment of sales and use tax when purchasing or using property subject to these taxes. Further, such organizations and institutions must comply with the provisions of these laws which require the collection of sales tax and the filing of sales tax returns, when engaging in the business of selling tangible personal property at retail or when engaging in the business of operating a place of amusement or entertainment."

In State v. Natco Corporation, 265 Ala. 184, 90 So.2d 385, we said that the concepts with respect to the use tax are somewhat different from those of the sales tax, but the laws enacting the two taxes are complementary one to the other and we have construed them as being in pari materia. And in Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812, we said:

"The intent and result of this legislation is to impose a sales tax on sales which occur within the state, and a use tax (so called) measured by the retail sale price of goods purchased outside of the state for use within the state. For these reasons these two acts are referred to as being complementary, one to the other. The Use Tax Act is referred to as a compensatory measure, to equalize the burden of the sales tax and prevent avoidance of the tax by the purchase of goods in interstate commerce or from outside of the state. As was said on former appeal of this case, 'The dominating legislative intent was to prevent evasion of the sales tax levy by persons resident or engaged in business within Alabama by purchasing goods, chattels and other property

outside of the State of Alabama at retail and bringing them into this state for use and consumption, regardless of the methods or means of transportation or the use to which they are applied. The levy of the tax attaches after the act of transportation ends and the property comes to rest in this state for use or consumption. * * * ' "

The use tax is a tax on the consumer or purchaser just as we have held that the sales tax is a consumer's tax. Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L. R.2d 918.

There are exemptions in our sales tax and use tax statutes but none is applicable to the items contested by appellant.

We have no difficulty in holding that there is no bar to the assessment and collection of a use tax on the items in controversy in either the Constitution or the statutes of Alabama.

That brings us to a consideration of the First and Fourteenth Amendments to the Constitution of the United States. The applicable part of the First Amendment reads, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * * ", and the Fourteenth Amendment makes that provision applicable to the States, according to the U. S. Supreme Court.

Title 51, § 789, Code 1940, specifically exempts from the use tax, "(b) Property, the storage, use or other consumption of which this state is prohibited from taxing under the constitution or laws of the United States of America or under the constitution of this state." If the First Amendment prohibits the application of the use tax to the purchase of the items here considered, then Tit. 51, § 789(b), merely states that the Legislature did not intend to tax them. So we come back to the question of the application of the First Amendment.

The trial court and appellant rely chiefly on State v. Van Daalan, 69 S.D. 249, 11

N.W.2d 523. In that case, the Supreme Court of South Dakota held that the conviction of the defendants, Jehovah's Witnesses, for failing to procure a retailer's permit and for failing to make sales tax returns on religious pamphlets sold, should be set aside. The court held that under the authority of Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, "the state is without authority to require the payment of the tax and impose the duty and obligation upon the appellants," because similar requirements had been held unconstitutional in the Murdock case.

We cannot agree that the Van Daalan case or the Murdock case is pertinent authority here. As we understand Murdock, the Supreme Court of the United States held that the members of Jehovah's Witnesses "spread their interpretations of the Bible and their religious beliefs largely through the hand distribution of literature"; that it is a combination of preaching and distribution of religious literature; and that this "form of religious activity occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits"; that "itinerant evangelists who disseminate their religious beliefs and the tenets of their faith through distribution of literature" are protected by the First Amendment; that "spreading one's religious beliefs or preaching the Gospel through distribution of religious literature and through personal visitations is an age-old type of evangelism with as high a claim to constitutional protection as the more orthodox types"; and that their convictions for failing to procure a city license to transact business must be set aside even though some of the pamphlets were sold as they went from door to door. The court said that the Murdock case presented a single issue—"the constitutionality of an ordinance which as construed and applied requires religious colporteurs to pay a license tax as a condition to the pursuit of their activities."

We think the Van Daalan case was properly decided because the tax in South

Dakota was held to be a tax on the occupation of preaching by Jehovah's Witnesses, and such a tax is unconstitutional under the decision of the Federal Supreme Court in Murdock.

But in a 1947 case, Watchtower Bible & Tract Society v. Los Angeles County, 30 Cal.2d 426, 182 P.2d 178, the same religious sect, Jehovah's Witnesses, contested a personal property tax on the literature, pamphlets, etc. which they had stored in a building and which would be withdrawn from time to time and used by "the Jehovah's Witnesses in the exercise of their religion and for proselyting purposes." The court said:

"It has never been supposed that the property used in the exercise of the rights of freedom of press or religion is not subject to a uniform tax for revenue imposed upon all alike." * * * "

And the court quoted the following from the Murdock case:

" * * * We do not mean to say that religious groups and the press are free from all financial burdens of government. See Grosjean v. American Press Co., 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660. We have here something quite different, for example, from a tax on the income of one who engages in religious activities or *a tax on property used or employed in connection with those activities*. It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon. * * * "

The Supreme Court of California said that the tax was not "a tax on the exercise of a right, privilege, occupation, calling, or activity," but was "payable whether or not the property is used in a commercial profit motive enterprise", and concluded:

"And we have seen the tax here involved is not such a burden on the exercise of religion as to render it invalid.

It is not of the character heretofore denounced by the Supreme Court of the United States. While the power to tax may involve the power to destroy it is clear that no such result will be accomplished by the tax here imposed. The property here involved is required to bear only its share of the burden of the maintenance of the government which is for its protection equally with other property in Los Anegles County. The very liberty invoked is made realistic by the protection afforded by that government."

The Supreme Court of the United States denied certiorari in the Watchtower case, 332 U.S. 811, 68 S.Ct. 112, 92 L.Ed. 389. The Watchtower Bible & Tract Society then filed a declaratory judgment action in Federal District Court contending that the tax was a tax on its freedom of worship and violative of the guarantees of the First and and Fourteenth Amendments. The District Court cited and approved the opinion of the Supreme Court of California and followed the decision of the Supreme Court of the United States in Murdock. The court said:

"In short, we take it to be the law that the guaranty of free worship does not prevent the taxation, as property, of goods and things, be they books or not, while they are in storage, and waiting to be distributed or used by members of a religious group. If carried to its logical conclusion, the 'stream of worship' theory would prevent a city or state from taxing the linotype machines which the plaintiff organization might own and on which the books are printed, and any of the component parts which go into the making of the books, such as paper, type, lead, and, for that matter, the income of persons who may be engaged in writing the religious books. The First Amendment does not go to that length. It merely protects the act of worship. Distribution of literature may be a part of the exercise of freedom of worship and of the freedom of the press, for that matter. * *

But it does not immunize against local taxation instrumentalities of worship, such as books and literature *while they are stored.* * * *" Watchtower Bible & Tract Society v. Los Angeles County, D.C., 84 F.Supp. 352.

The case was affirmed by the Court of Appeals, 9th Cir., 181 F.2d 739, and certiorari was denied 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602.

There the taxation on the books and pamphlets which were used in their type of preaching was on their storage, prior to their use. And the Alabama Use Tax is a tax on retail sales of articles to be stored, used or consumed in this State and attaches when the goods come to rest in Alabama, prior to their use and irrespective of what that use may be.

■ Here the use tax is uniform, nondiscriminatory, levied on all sales alike, regardless of the use to which the property may be put, applies at the same rate to purchases of rich and poor, individuals, partnerships and corporations alike; and the tax liability attaches after the act of transportation ends and the property comes to rest in this State for use or consumption, unless there is a contractual intent to the contrary. State v. Hanna Steel Corp., 276 Ala. 50, 158 So.2d 906.

We are not informed that any appellate court has held that all property used exclusively for religious purposes is protected from all taxation by the First Amendment and we think the language of the Supreme Court of the United States in Murdock, "We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities," negates such contention.

The trial court, in its opinion, adverted to Act No. 818, Acts of Alabama 1961, p. 1205, which exempted from the use tax "printed or illustrated lessons, notes, and explanations distributed by churches or other religious organizations free of charge to pupils or students in Sunday schools, Bible classes, or other educational facilities established and maintained by churches or similar religious organizations in this state"; and the trial court stated:

> "The Court considers that Bible lessons and the like, thus used, were in fact already exempt by reason of the constitutional mantle thrown around religious worship to protect the absolute freedom thereof and views the legislative act as but a positive expression of the concern of Alabama for the complete religious freedom of its people."

We cannot agree. We think it took positive action by the Legislature to exempt those publications, and we think it will require such action to exempt the items contested in the instant case.

■ We are persuaded that personal property, purchased at retail, outside of Alabama, even though used exclusively by a religious group in their religious services, is not exempt from use tax under our Constitution and statutes and that the Supreme Court of the United States has not held such personal property to be exempt or excluded under the First Amendment.

It follows that the decree of the trial court is reversed and the cause is remanded with directions to enter a decree in accordance with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN, COLEMAN and HARWOOD, JJ., concur.

SIMPSON, J., dissents.